# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

LESLIE YOUNG
ADC #709094                                                    PETITIONER


VS.                         5:10CV00102 JMM/JTR


RAY HOBBS, Director,
Arkansas Department of Correction                              RESPONDENT


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.   An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Room A149
Little Rock, AR 72201

## I.  Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Leslie Young ("Petitioner"), who is collaterally attacking her capital murder conviction in Sharp County Circuit Court. (Docket entry #2).  Respondent has filed

a Response (docket entry #10), to which Petitioner has filed a Reply.[1] (Docket entry #11). Thus, the issues are joined and ready for disposition.

Before addressing Petitioner's habeas claims, the Court will review the relevant procedural history of the case in state court.

On July 21, 2006, a Sharp County jury convicted Petitioner of capital murder, aggravated robbery, residential burglary, two counts of theft of property, and attempted arson. (Trial Tr. 80-83).[2] She was sentenced to life imprisonment, without the possibility of parole, for her capital murder conviction, and an aggregate term of 639 months' imprisonment for her remaining convictions, to run consecutive to her life sentence. *Id.*

Petitioner appealed to the Arkansas Supreme Court, where she argued that: (1) the evidence was insufficient to support her convictions; (2) the trial court should have suppressed her custodial statement; (3) the trial court should have suppressed evidence seized from a warrantless search of her blue jeans; and (4) the jury was erroneously instructed on accomplice liability for capital murder. On May 31, 2007, the Arkansas Supreme Court affirmed, but ordered a limited remand to determine the

---

[1]Petitioner has also filed pleadings submitting additional documents for the record. (Docket entries #21 and #22).

[2]The trial transcript ("Trial Tr.") is docketed as Exhibit 3 to docket entry #18.

voluntariness of Petitioner's custodial statement.[3] *Young v. State*, 370 Ark. 147, 257 S.W.3d 870 (2007).

On July 25, 2007, the trial court conducted a new hearing on whether Petitioner's custodial statement was voluntary.[4] (Supp. Tr. 23-92).  On October 5, 2007, the trial court entered an order denying her motion to suppress her custodial statement. (Supp. Tr. 20A).  She appealed, and, on March 20, 2008, the Arkansas Supreme Court affirmed. *Young v. State*, 373 Ark. 41, 281 S.W.3d 255 (2008).

On May 29, 2008, Petitioner  filed a *pro se* Rule 37 Petition in Sharp Count Circuit Court, raising various postconviction claims. On October 20, 2008, the trial court conducted an evidentiary hearing, and, on February 27, 2009, it entered an order denying Rule 37 relief. On March 23, 2009, Petitioner filed a timely notice of appeal.

On August 24, 2009, Petitioner tendered a partial record to the Clerk of the Arkansas Supreme Court, and filed a motion requesting permission to lodge an untimely record.[5]  On November 5, 2009, the Arkansas Supreme Court dismissed

---

[3]The Court held that, because there were material witnesses that were "connected with [Petitioner's] controverted statements" which the prosecution failed to produce at her pretrial suppression hearing, she was entitled to a new suppression hearing. *Young*, 370 Ark. at 154-155, 257 S.W.3d at 877.

[4]*See* Exhibit 4 to docket entry #18, which will be referred to as "Supp. Tr."

[5]The partial record that Petitioner tendered in her Rule 37 appeal is docketed as  Exhibit 6 to docket entry #18.

Petitioner's appeal because she "failed to state good cause for failure to conform with our rules of procedure." *Young v. State*, 2009 Ark. 556, 2009 WL 3681658 (2009) (unpublished) (internal citations omitted).

On April 12, 2010, Petitioner initiated this federal habeas action. (Docket entry #2). In her Petition, she asserts twenty claims for relief: (1) the evidence at trial was insufficient to support her convictions; (2) the trial court erred in denying her motion to suppress her custodial statement; (3) the trial court erred in denying her motion to suppress the search of her blue jeans; (4) the trial court erred in giving a "separate accomplice instruction" on the capital murder charge; (5) the evidence obtained from her blue jeans was seized pursuant to "an unconstitutional search and seizure;" (6) she was unlawfully arrested; (7) she was arrested under an unlawful "pretext;" (8) trial counsel was ineffective for failing to obtain prior inconsistent statements of certain witnesses; (9) the trial court erred in allowing the testimony of a pawn shop owner where the victim's items were pawned; (10) the jury was improperly instructed on accomplice liability; (11) trial counsel was ineffective for failing to subpoena her husband to testify at trial; (12) trial counsel was ineffective for failing to file a timely motion to suppress and inadequately arguing the illegality of her seizure; (13) trial counsel was ineffective for failing to obtain a DNA expert; (14) trial counsel was ineffective for failing to object to improperly admitted evidence; (15) certain evidence

5

was improperly admitted at trial; (16) a proper chain of custody was never established as to certain evidence; (17) on remand, the trial judge and prosecutor engaged in misconduct at her suppression hearing; (18) the trial judge erred in allowing testimony concerning the value of the victim's tools; (19) trial counsel "failed to advocate" for her; and (20) her convictions for capital murder and aggravated robbery violated double jeopardy. (Docket entry 2 at 12-36).

For the reasons discussed below, the Court concludes that all of Petitioner's habeas claims are either without merit or are procedurally defaulted. Thus, the Court recommends that her habeas Petition be denied, and that the case be dismissed, with prejudice.

## II. Discussion

Under 28 U.S.C. § 2254, a habeas petitioner must show that the state court's adjudication of his or her claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[;]" or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confront[ed]

facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Consistent with these controlling legal principles, the Court will now analyze Petitioner's habeas claims.

## A.     Sufficiency Of The Evidence Supporting Petitioner's Convictions

According to Petitioner, the evidence at trial was insufficient to support her convictions. "Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Garrison v. Burt*, 637 F.3d 849, 854 (8th Cir. 2011) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).[6]

_____

[6]One of Respondent's procedural default arguments is that Petitioner's sufficiency of the evidence claims are barred from habeas review because she did not argue them as federal constitutional violations in state court. (Docket entry #10 at 9).

As indicated previously, Petitioner was convicted of capital murder, aggravated robbery, residential burglary, theft of property, and attempted arson. In pertinent part, the applicable capital felony murder statute provides as follows:

> (a) A person commits capital murder if
>
> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit . . . robbery § 5-12-102 . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

Ark. Code Ann. § 5-10-101(a)(1) (Repl. 2006).

"A person commits robbery if, with the purpose of committing a felony or misdemeanor theft[7] or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another." Ark. Code Ann. § 5-12-102(a) (Repl. 2006). A robbery under Ark. Code Ann. § 5-12-102 is an "aggravated robbery" when the person: "(1) [i]s armed with a deadly weapon or represents by word or conduct that he is so armed; or (2) [i]nflicts or attempts to

---

While Respondent is generally correct that a habeas petitioner must refer to a specific federal constitutional right in presenting his or her claims in state court, the Eighth Circuit has held that "any challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." *See Satter v. Leapley*, 977 F.2d 1259, 1262 (8th Cir.1992).

[7]A person commits theft of property if he knowingly takes or exercises unauthorized control over the property of another person with the purpose of depriving the owner of the property. Ark. Code Ann. § 5–36–103(a)(1) (Repl.2006).

inflict death or serious physical injury to another person." Ark. Code Ann. § 5-12-103(a) (Repl. 2006). "The intent to commit a robbery may be inferred from the facts and circumstances in a case." *Harper v. State*, 359 Ark. 142, 194 S.W.3d 730 (2004).[8]

During the trial, Devonda Furr testified that "before dark" on January 1, 2006, Stephen Furr, her ex-husband and the murder victim, and Petitioner and her husband, William "Bill" Young, came over to her Cave City apartment.   (Trial Tr. 449-450). Later that night, they all went to the Cave City home of Greg Girtman, drank some beers, and then went back to her apartment.  Around 1:20 or 1:25 a.m. on January 2, the victim, Petitioner, and Bill Young left her apartment. (Trial Tr. 452).

Later on the morning of January 2, Devonda took her two sons to the victim's home in Poughkeepsie so that they could pick up a toy.[9]  (Trial Tr. 454). They noticed the victim's truck was not there. The boys went inside the residence and found their father's body. (Trial Tr. 453-454).

A short time later, Sharp County Sheriff's Detective John Qualls arrived at the victim's residence. (Trial Tr. 250). He found the victim's body on a recliner.  It appeared the victim had suffered multiple stab wounds. (Trial Tr. 251). There was

---

[8]While Petitioner argues that the evidence was insufficient to support her convictions for attempted arson and theft of property, she clearly has procedurally defaulted all claims related to those two convictions. *See* discussion *infra* at 15-17.

[9]Both boys were the children of Devonda and Stephen Furr.

blood spatter on the wall to the right of the body. (Trial Tr. 257). A bloody "Old Hickory" butcher knife and a "Klein" flat head screwdriver were found underneath his body. (Trial Tr. 259, 269-270). A propane stove had been ripped from the wall and was leaking gas.  (Trial Tr. 261-262). Some time later, Detective Qualls recovered items of personal property belonging to the victim that had been pawned at an E-Z Pawn in Independence County.[10] (Trial Tr. 271).

The medical examiner testified that the victim died from twelve stab wounds from a knife. (Trial Tr. 327-330, 337).  He also had twenty-two "blunt force" injuries consistent with a screwdriver.  (Trial Tr. 330).

Nolan Henning testified that, on January 2, 2006, he met Petitioner and her husband at a convenience store in Batesville. (Trial Tr. 481-482). The Youngs were in a "utility truck," and Mr. Henning positively identified a photograph of the victim's truck as the vehicle the Youngs were driving. (Trial Tr. 482). Bill Young told him he had some things to sell. (Trial Tr. 483). He showed him some guns and tools. (Trial Tr. 483). Petitioner told him that "we need some money real bad because we need to leave town." (Trial Tr. 484).

---

[10]These items included a bag containing tools, a temperature gauge, a Sawsall, a battery, a battery charger, and a set of refrigerant gauges. (Trial Tr. 271). Chris Furr, the victim's brother, testified that the items recovered from the pawn shop were his brother's tools. (Trial Tr. 416-424).

David Drew testified that Petitioner and Bill Young pulled a truck into his yard at 11:00 or 11:30 a.m. on January 2, 2006. (Trial Tr. 427). "They asked me if I could go pawn some tools for them[.]" (Trial Tr. 427). Drew positively identified a photograph of the victim's truck as the vehicle the Youngs were driving. (Trial Tr. 428). Bill Young put the tools in Drew's truck, and the two men drove to a pawn shop. (Trial Tr. 429). Petitioner did not go with them. (Trial Tr. 430). Because the pawn shop was closed, Drew and Bill Young returned to Drew's home with the tools, and then the Youngs left in the victim's truck. (Trial Tr. 430-431).

Jimmy Doug Simpson testified that, on the night of January 2, 2006, he saw Petitioner at Becky Lambert's house. (Trial Tr. 296). Simpson positively identified a photograph of the victim's truck as the vehicle Petitioner and Bill Young were driving. (Trial Tr. 297). Later that night, the Youngs parked the victim's truck at Simpson's house and they spent the night there. (Trial Tr. 297-298).

On the morning of January 3, Simpson drove the Youngs to a pawn shop "out towards Desha" to pawn the tools the Youngs had with them. (Trial Tr. 300). Simpson positively identified photographs of the victim's tools as those the Youngs had with them. (Trial Tr. 299).

Dewayne Bishop worked part-time at E-Z Pawn in Batesville. (Trial Tr. 280). He knew Bill Young and had done business with him before. On January 3, 2006,

11

Bill Young and Jimmy Doug Simpson visited E-Z Pawn. (Trial Tr. 281). A female remained outside in the truck. (Trial Tr. 282). Bishop identified photographs of the victim's tools, which Bill Young pawned.

Captain Bill Lindsey, with the Independence County Sheriff's Department, testified that on January 3, 2006 he learned that the victim's truck had been stopped by police leaving Batesville. (Trial Tr. 289). It was being driven by Jimmy Doug Simpson, who told the police that he had taken Bill Young to a doctor's office in Batesville. (Trial Tr. 289). Captain Lindsey dispatched officers to that location. (Trial Tr. 289-290). Officers found the Youngs inside a parked car near the doctor's office. The vehicle belonged to Anita Miller. (Trial Tr. 290).

Anita Miller testified that on January 3, 2006, she saw Petitioner and Bill Young enter the doctor's office where she was waiting for her appointment. (Trial Tr. 498). They asked her for a ride home, and she gave them the keys to her car and told them to wait outside until she completed her appointment. (Trial Tr. 499). When she left the doctor's office the police were arresting the Youngs. (Trial Tr. 499). Because she had watched their arrest, she knew that Petitioner had been sitting in the front passenger's seat. (Trial Tr. 500). After the Youngs' arrest, Miller cleaned her car. She found a wallet containing the victim's driver's license under the front passenger seat. (Trial Tr. 501-502).

12

Sharp County Sheriff Dale Weaver testified that, on January 3, 2006, he interviewed Petitioner about what she did on the night of January 1,2006. (Trial Tr. 437-438). She told him that she and her husband were "with Steve [Furr] and his [ex]wife and that they drove around and went to another couple's place . . . [a]nd later they had dropped Steve's [ex]wife off and that they had gone to Steve's house and that they stayed there until about 2 o'clock in the morning. And that Steve had taken them home and left them." (Trial Tr. 438). When Sheriff Weaver told her that "something really bad happened at [the victim's] home," she "just immediately said, I didn't do it, and shook her head negative like as if she was saying, I didn't do it." (Trial Tr. 438-439).

David Huffmaster, a deputy with the Sharp County Sherif's Office, testified that packaging for "Maxum" pepper spray was found on the floor of the victim's home, to the left of his body. (Trial Tr. 510). Petitioner was carrying a cannister of "Maxum" pepper spray when she was booked into the jail on January 3, 2006. (Trial Tr. 396-398; 406-408; 512-513).

A fingerprint examiner with the Arkansas State Police testified that he lifted five latent fingerprints from inside the victim's truck. These prints belonged to Petitioner. (Trial Tr. 374-377).

Lisa Channell, the chief criminologist with the Arkansas State Crime Lab,

13

testified that she took two samples from among numerous blood stains that were found on the blue jeans Petitioner was wearing when she was arrested and booked. (Trial Tr. 339-344). Terry Rolse, the chief forensic DNA examiner for the Arkansas State Crime Lab, testified that DNA from the blood samples recovered from Petitioner's jeans matched the victim's genetic profile. (Trial Tr. 358-359).

Based on the foregoing evidence, the Arkansas Supreme Court held that the jury had not "had to resort to speculation or conjecture to conclude that Mr. Furr was killed in the course or in furtherance of an aggravated robbery." *Young*, 370 Ark. at 152, 257 S.W.3d at 876.

The legal standard recited and applied by the Arkansas Supreme Court, while resting on state law, is consistent with *Jackson* and, therefore, was not "contrary to" applicable United States Supreme Court precedent under § 2254(d)(1). *See* S*era v. Norris*, 400 F.3d 538, 543 n.1 (8th Cir.2005) (legal standards applied by the Arkansas Supreme Court to assess the sufficiency of the evidence are not contrary to United States Supreme Court precedent). Furthermore, on habeas review, this Court is required to view the evidence in the light most favorable to the state, and it must presume that all conflicting inferences were resolved in the state's favor. Under that standard, the Court is satisfied that the evidence was constitutionally sufficient to support Petitioner's capital felony murder conviction, along with the underlying

14

felony of aggravated robbery. Accordingly, the Arkansas Supreme Court's decision on that issue was reasonable.

Finally, Petitioner argues that the evidence was insufficient to support her convictions for attempted arson and theft of property. The Arkansas Supreme Court held that those arguments were not preserved for review on direct appeal because she did not raise them in the trial court. *See Young*, 370 Ark. at 150, 257 S.W.3d at 874 ("Young failed to present to the circuit court an argument on the charges of attempted arson and theft of property in her motion for directed verdict. Therefore, we will not entertain the argument that the circuit court erred in failing to grant Young's motion for directed verdict on the charges of attempted arson and theft of property").

A federal habeas claim is procedurally defaulted where a state court declines to review it due to the petitioner's failure to follow state procedural rules in presenting it. *See Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006), *cert. denied*, 549 U.S. 1059 (2006). Thus, Petitioner's challenges to the sufficiency of the evidence to support her attempted arson and theft of property convictions are in procedural default. "[F]ederal habeas review of defaulted claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Turnage v. Fabian*, 606 F.3d 933, 941

15

(8th Cir. 2010) (*quoting Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Petitioner argues that, as cause to excuse her procedural default, her attorney was ineffective because he failed to properly argue her directed verdict motions. While ineffective assistance of counsel may constitute cause to excuse procedural default and allow the Court to reach the merits of a habeas claim, the ineffective assistance of counsel claim itself must have been properly presented in state court: "[T]he exhaustion doctrine requires that a claim for ineffective assistance of counsel be initially 'presented to the state courts as an independent claim before it may be used to establish cause for a procedural default' in a federal habeas proceeding." *Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir.2003) (*quoting Murray v. Carrier*, 477 U.S. 478, 489 (1986)). For the reasons explained below in Section II.E, all of Petitioner's ineffective assistance of counsel claims are in procedural default based on her failure to perfect her Rule 37 appeal in state court. As a result, those independent ineffective assistance of counsel claims were never presented to the state courts, and Petitioner cannot rely on those claims to establish cause to excuse her procedural default on her sufficiency of the evidence claims.[11]

---

[11]Petitioner makes the conclusory argument that she is "actually innocent." (Docket entry #2 at 10). However, she has not come forward with any evidence to establish the "actual innocence" exception to procedural default. To establish actual innocence, a habeas petitioner must: (1) come forward with new reliable evidence that was not available at trial, and, importantly, could not have been discovered earlier

16

Accordingly, the Court recommends that Petitioner's first claim for habeas relief be denied.

### B.    Admissibility of Petitioner's Custodial Statement

Petitioner argues that the trial court erred in denying her motion to suppress the custodial statement she made to Sheriff Weaver.[12]

During the suppression hearing, Independence County Sheriff's Deputy Chris Little testified that, on January 3, 2006, he arrested Petitioner at a doctor's office in Batesville.[13] (Supp. Tr. 28). He did not have any conversations with her or attempt to elicit information from her. (Supp. Tr. 29). She seemed clear-headed and did not appear to be under the influence of drugs or alcohol. (Supp. Tr. 30). He transported her to the Sharp County line, and transferred custody to Arkansas State Trooper Page.

─────────────────────

through the exercise of due diligence; and (2) show, in light of that new reliable evidence, that it is more likely than not that no reasonable juror would have convicted him. *See Kidd v. Norman,* 651 F.3d 947 (8th Cir. 2011); *see also McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001) ("In order to establish a valid claim of actual innocence, a defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction").

[12]As previously explained, in Petitioner's direct appeal of her conviction, the Arkansas Supreme Court rejected all of her arguments, but remanded the issue of the admissibility of her custodial statement for a new hearing. *Young v. State*, 370 Ark. 147, 257 S.W.3d 870 (2007). Thus, she is now challenging alleged errors made by the trial court during the second suppression hearing.

[13]A radio dispatch log reflects that Petitioner was taken into custody at 11:45 a.m. (Docket entry #2 at 40).

(Supp. Tr. 28-31). Little was present when Trooper Page advised Petitioner of her *Miranda* rights. (Supp. Tr. 32).

Trooper Page testified that, after Little arrived with Petitioner, he read her the *Miranda* warnings in front of his car and videotaped it. (Supp. Tr. 37). Petitioner acknowledged to Trooper Page that she understood her rights. (Supp. Tr. 38). He asked her "if she understood what I read to her," and she answered "yes." (Supp. Tr. 47). Trooper Page then transported her to the jail in Ash Flat, and did not have any further conversation with her. (Supp. Tr. 38).

Elaine Moody, the "jail matron" at the Sharp County Sheriff's office, testified that Trooper Page brought Petitioner to the jail on January 3, 2006. Moody booked her and placed her in a holding cell. (Supp. Tr. 48-49).

Wendy Flynn, a former officer with the Sharp County Sheriff's office, testified that she accompanied Sheriff Weaver to the jail to interview Petitioner on January 3, 2006. According to Flynn, it was standard procedure to have a female present when dealing with a female detainee.[14] (Supp. Tr. 55-56). Flynn heard Weaver ask Petitioner if she had "been Mirandized," and she asked: "Does that mean I have been read my rights? And he said, yes. And then she answered, yes." (Supp. Tr. 57).

---

[14]Ms. Flynn testified that it was about 1:30 p.m. when she and Sheriff Weaver arrived to speak with Petitioner. (Supp. Tr. 64). She testified that they were with her for about ten minutes. (Supp. Tr. 64).

18

Weaver asked Petitioner some questions and she answered them. However, once she stated that she needed a lawyer, the questioning stopped. (Supp. Tr. 59).

Sheriff Weaver testified that, on January 3, 2006, he was contacted by the jail administrator and told that Petitioner had blood stains on her blue jeans. (Supp. Tr. 67). He told her to "take those as evidence" and put them in a bag. (Supp. Tr. 67). The jail administrator also told him that Petitioner might have blood on her face and hands.   He went to Petitioner's cell to look at her arms and possibly obtain swabs of any blood. (Supp. Tr. 67).

Weaver asked Petitioner: "Leslie, have you been Mirandized? And she said, does that mean read my rights? And I said yes, that's what it means. And she said, yes. And I said well, with that in mind, would you want to talk to me about this? And she said yes."[15] (Supp. Tr. 68). Weaver indicated that Petitioner was not intoxicated and seemed to understand everything he was saying to her. (Supp. Tr. 70). When he asked her how she and her husband got home on January 2, she said that the victim drove them home at about two in the morning. (Supp. Tr. 71). When he told her that she and her husband had been seen later that day in Batesville driving the victim's truck, she asked to speak with a lawyer and the interview ended. (Supp. Tr. 70-72).

---

[15] According to Weaver, Trooper Page told him that he had read Petitioner "her rights." (Supp. Tr. 68).

After hearing all of the testimony, the trial court took the motion to suppress under advisement. It later entered an order ruling that Petitioner's custodial statement was admissible.   (Supp. Tr. 20A).

Petitioner appealed that ruling to the Arkansas Supreme Court. While Petitioner conceded that she "was advised of her *Miranda* rights by Arkansas State Trooper Jeremy Page prior to the interrogation by Weaver," she argued that her statement was involuntary because she did not waive her *Miranda* rights prior to her interrogation by Weaver. *Young*, 373 Ark. at 42, 281 S.W.3d at 256.   The Arkansas Supreme Court rejected this argument and held that, under the totality of the circumstances, Petitioner had impliedly waived her *Miranda* rights before being questioned by Weaver:

> Young was advised of her *Miranda* rights, acknowledged that she understood them, and, prior to submitting to interrogation, did not invoke her *Miranda* rights in any manner.  Rather, she chose to submit to questioning by law enforcement. In *Scott v. State*, 298 Ark. 214, 217, 766 S.W.2d 428, 430 (1989), this court noted that "[t]he United States Supreme Court discussed waiver of the right to counsel in *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)[,]" and that "*Patterson* reemphasized the holding in *Miranda* that a proper warning, prior to waiver of rights, is necessary before the police may question an accused." A criminal defendant may waive the *Miranda* rights when he or she is advised of the *Miranda* rights, fails to invoke those rights in any manner, and then proceeds to give inculpatory statements.  In *Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992), the defendant was arrested on suspicion of murder and advised of his *Miranda* rights. While being transported to the police station, Ward

stated that he had not hurt anybody and repeated an account of his encounter with the victim that he had given prior to his arrest. At the police station, Ward was again advised of his *Miranda* rights. Ward acknowledged that he understood his rights and agreed to talk to the officers on the condition that his statement not be taped. Ward also refused to sign the waiver-of-rights form, and yet made a statement that was then introduced at trial. The statements made after Ward was advised of his *Miranda* rights were admissible because he had been advised of his rights, acknowledged that he understood them, and chose to speak with law enforcement. Similarly in *United States v. Ogden*, 572 F.2d 501 (5th Cir.1978), the court found that where Ogden was arrested, advised of his *Miranda* rights, indicated that he understood them, and nevertheless chose to speak with law enforcement and give inculpatory statements, those statements were admissible. In *Fleming v. State*, 284 Ark. 307, 681 S.W.2d 390 (1984), the criminal defendant was advised of his rights, made no comment invoking them, and thereafter answered questions. The statements were found to be voluntary and admissible.

Here, Young was advised of her rights, acknowledged that she understood her rights, and then chose to submit to interrogation. Weaver specifically asked her if she had been advised of her rights, and when she answered that she had, Weaver asked if keeping that in mind she wished to speak with him. She responded that she did. It is clear to this court that Young waived her *Miranda* rights by implication. We hold that the circuit court's ruling is not against the preponderance of the evidence and affirm the circuit court's decision that the statement was voluntary and admissible.

*Young*, 373 Ark. at 43-44, 281 S.W.3d at 257-258 (internal footnotes omitted).

In challenging the Arkansas Supreme Court's decision, Petitioner focuses on the discrepancy between the time stamp of the video of her being read the *Miranda* warnings by Trooper Page, and the time line described in the testimony of the witnesses. (Docket entry #2 at 13-14). However, Trooper Page testified at the

suppression hearing that he took Petitioner into custody "before lunch" on January 3, and acknowledged that the time stamp on the video of him reading Petitioner her *Miranda* rights reflected "one-something in the afternoon." (Supp. Tr. 42).  He explained this discrepancy by noting that his vehicle's video system sometimes "malfunctions" and is "not always correct." (Supp. Tr. 42).

While the time line of events surrounding Petitioner's interrogation is not a model of clarity, she has not shown that the Arkansas Supreme Court's conclusion "that the interrogation by Sheriff Weaver occurred within no more than two hours of being advised of her rights" was an unreasonable determination of the facts. After all, it is undisputed that Trooper Page advised Petitioner of her *Miranda* rights, and that Petitioner affirmatively stated that she understood those rights. Finally, there is no evidence that Weaver coerced her into speaking with him in the jail at approximately 1:30 p.m. on January 3..

Furthermore, the Arkansas Supreme Court's determination that Petitioner had impliedly waived her *Miranda* rights is consistent with controlling United States Supreme Court precedent.  A suspect may expressly waive his or her *Miranda* rights if it is "voluntary in the sense that it [is] the product of a free and deliberate choice rather than intimidation, coercion, or deception," and is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision

to abandon it." *See Moran v. Burbine*, 475 U.S. 412, 421 (1986). However, "waivers can be established even absent formal or express statements of waiver[.]" *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2261 (2010). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* at 2262. "In making its ruling on the admissibility of a statement made during custodial questioning, the trial court, of course, considers whether there is evidence to support the conclusion that, from the whole course of questioning, an express or implied waiver has been established. . . . In sum, a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Id.* at 2264; *see also Treesh v. Bagley*, 612 F.3d 424 (6th Cir. 2010) (finding an implied waiver despite a two-hour interval between the full *Miranda* warnings at arrest and interrogation); *United States v. Cardwell*, 433 F.3d 378, 389-390 (4th Cir. 2005) (two hour interval between advice of *Miranda* rights where defendant indicated he understood those rights and later interrogation constituted an implied waiver — "Because [Defendant] had been fully informed and indicated his understanding of his *Miranda* rights, his willingness to answer [the agent's] question is as clear an indicia of his implied waiver of his right to remain silent as we can imagine"); *United States*

23

*v. Frankson*, 83 F.3d 79, 82-83 (4th Cir. 1996) (two and a half hour delay between defendant's acknowledged understanding of rights, without a "formal" waiver, and interview was nonetheless an implied waiver — "Even though [defendant] never 'formally' waived his rights, such cooperation, when coupled with his acknowledgment of his *Miranda* rights, constituted a valid waiver).

Accordingly, the Court recommends that Petitioner's second claim for habeas relief be denied.

### C.    Constitutionality of the Search of Petitioner's Blue Jeans

Petitioner contends that the trial court should have suppressed the results of a warrantless search and seizure of her blue jeans. On the second day of trial, Petitioner's attorney orally moved "to suppress the DNA evidence from the defendant's clothing that was obtained the day after the homicide."[16] (Trial Tr. 306). He argued that Petitioner had a "reasonable expectation of privacy in her clothing" which required the police to obtain a warrant before the crime lab could take cuttings from the jeans to perform DNA testing.[17] Instead, following Petitioner's arrest, her

---

[16]In explaining why he had waited so long to make this motion, defense counsel said "it just occurred to him this morning." (Trial Tr. 309).

[17]Defense counsel specifically argued as follows:

Well, I think there is a reasonable expectation of privacy in her clothing and in its physical integrity, ah, after it was seized for her. I

24

clothing was sent to the state crime lab for DNA testing and blood spots on her blue jeans matched the victim's DNA.(Trial Tr. 306-307). Defense counsel argued that

The trial court denied the motion because it was untimely, noting that "he [defense counsel] of course had knowledge that this [the seizure and DNA testing of the jeans] was done." (Trial Tr. 308-309). The trial court went on to find that "there is not a reasonable expectation of privacy on the clothing that was obtained in what amounted to, I would suppose, an inventory search inside of the jail . . . [and] was in plain view also." (Trial Tr. 309).

On direct appeal, Petitioner argued that she had a "reasonable expectation that the physical integrity of her clothing would be preserved," but "[did] not contend that

---

don't dispute the fact that when they took her over to the jail they had the right to put her in jail clothing. They then had her jeans.

My argument is that when it went to the crime lab and officers of the state — and they do some cutting, that's a second seizure that requires, and then do the analysis, that is a second seizure and a search, if you will, of that item that requires a warrant.

Now I — the crime lab didn't know there was no warrant for that, ah it's — you know, ah, a pair of trousers so it's just like any other piece of evidence received at th crime lab. So — but, as state agents I would argue that that search constitutes violation of her 4th Amendment Rights of the United States Constitution and Article 2, Section 15 of the Arkansas Constitution which gives her a specific right of privacy in her personal effects. And I don't know what could be more personal than the clothes you are wearing.

(Trial Tr. 308).

the State did not have the right to seize her blue jeans." *Young*, 370 Ark. at 155, 257

S.W.3d at 878. The Arkansas Supreme Court affirmed the trial court's denial of her

attorney's motion to suppress on the basis of its untimeliness under Rule 16.2 of the

Arkansas Rules of Criminal Procedure:

> Arkansas Rule of Criminal Procedure 16.2(b) requires that a motion to
> suppress be filed no later than ten days before the trial date. *See* Ark.
> R.Crim. P. 16.2 (2006). However, a circuit court may entertain a motion
> to suppress at a later time for good cause. *See Kimble v. State*, 331 Ark.
> 155, 959 S.W.2d 43 (1998). Here, the circuit court ruled first that the
> motion was untimely, but went on to opine that there was not a
> reasonable expectation of privacy in the clothing. While Rule 16.2 does
> not require every untimely motion to be denied, we do not find error in
> the circuit court's denial and affirm on this point.

*Young*, 370 Ark. at 155, 257 S.W.3d at 878.

Petitioner now reasserts her argument that the trial court should have granted

her motion to suppress the DNA evidence obtained from her blue jeans.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Court held that "where the State

has provided an opportunity for full and fair litigation of a Fourth Amendment claim,

the Constitution does not require that a state prisoner be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or

seizure was introduced at his trial." Under the Court's holding in *Stone*, a state court's

disposition of a Fourth Amendment claim is barred from federal habeas review

unless: (1) "the state provided no procedure by which the prisoner could raise his

Fourth Amendment claim;" or (2) "the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir.1994), *cert. denied*, 514 U.S. 1052 (1995). Finally, the rule announced in *Stone* is applicable despite legal or factual error committed by the state court, and does not require a federal court to review the state court's fact finding or its application of Fourth Amendment law. *See Willett*, 37 F.3d at 1272-73 (federal courts "are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation").

The state provided Petitioner with a full and fair opportunity to litigate her Fourth Amendment claim. Notably, Ark. R. Crim. P. 16.2 expressly allows a defendant to move to suppress evidence for constitutional violations, provided that the motion is filed not more than ten days prior to trial. Petitioner's failure to avail herself of this procedure, by filing a timely motion (or showing good cause for the untimely filing), does not allow her to avoid the Court's holding in *Stone*. *See Brown v. Hall*, 2010 WL 2802689 (N.D. Ohio July 14, 2010) (unpublished) (holding that a habeas petitioner had a "full and fair opportunity" to litigate his Fourth Amendment claim under a state procedural rule that allowed a defendant to file a pretrial motion to suppress, despite the state court's denial of the motion because it was untimely

under the rule — "no failure of that procedural mechanism frustrated [petitioner's] presentation of his Fourth Amendment claim"); *Gan v. Giurbino*, 2008 WL 4286939 (C.D. Cal. Sep. 15, 2008) (unpublished) (holding that a habeas petitioner had a "full and fair opportunity" to litigate his Fourth Amendment claim in state court even though his motion to suppress was denied on procedural grounds due to untimeliness — "the fact that he did not prevail when he attempted to exercise that [suppression] remedy, because he failed to comply with the timing requirement of [the state procedural rule] is irrelevant").

Accordingly, the Court recommends that Petitioner's third claim for habeas relief be denied.

### D.    Trial Court's Alleged Error in Giving a Separate Accomplice Instruction on the Charge of Capital Murder

Petitioner contends that the trial court erred in giving a separate accomplice liability instruction on the capital murder charge. According to her, this violated her Fifth Amendment Due Process rights by unduly emphasizing that she was an accomplice and instructed the jury on an alternative theory of criminal liability that was not charged in the information.

Petitioner attempted to raise this claim in her direct appeal, but the Arkansas Supreme Court held that it was not preserved for review because she did not present

it to the trial court, and inadequately briefed it on appeal:

> The record reveals that the only objection Young made to the separate accomplice instruction was that it was a "redundancy" because "accomplice liability is accomplished in the very charge of Capital Murder." Young now makes the constitutional argument . . . for the first time on appeal. As previously noted, this court will not address arguments, even constitutional ones, that are raised for the first time on appeal. Furthermore, both of these issues are argued by one sentence each, without further explanation of the merits. This court has repeatedly stated that it does not consider assignments of error that are unsupported by convincing argument or sufficient legal authority.

*Young*, 370 Ark. at 156, 257 S.W.3d at 878.

In a § 2254 habeas action, the Court "is prohibited from reviewing an issue the state court has resolved on an adequate and independent state ground, including procedural default." *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006). The Court concludes that Petitioner procedurally defaulted her habeas claim based on the well-established Arkansas rule that, on appeal, a party cannot change the grounds for an objection or motion. *See, e.g. Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004) ("A party cannot change his grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial.").

As cause to excuse her procedural default, Petitioner argues that her lawyer was ineffective in failing to properly argue the objections to the jury instructions. As discussed earlier, while ineffective assistance of counsel may constitute cause to

excuse a procedural default, it must also have been properly presented as an independent claim for relief in state court. Because Petitioner did not perfect her Rule 37 appeal, she procedurally defaulted her ineffective assistance of counsel claim. Therefore, it cannot constitute "cause" to excuse her failure to make her constitutional objection to the accomplice liability jury instruction during the trial.

Accordingly, the Court recommends that her fourth claim for habeas relief be denied.

### E.    Petitioner's Remaining Habeas Claims

Respondent argues that all of Petitioner's remaining claims are in procedural default because she failed to raise them in her direct appeal and never perfected a Rule 37 appeal. *See Krimmel v. Hopkins*, 56 F.3d 873, 875–76 (8th Cir.1995) (a habeas petitioner must "afford[] the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim").  In response, Petitioner asserts that her procedural default should be excused because the state court prevented her from perfecting a Rule 37 appeal. *See Washington v. Delo*, 51 F.3d 756, 760 (8th Cir. 1995) (the cause and prejudice exception generally requires a showing of "some external impediment" that prevented the raising of a habeas claim, and that the "obstacle caused actual prejudice").

The law is clear that a petitioner's *pro se* status, limited education, or

unfamiliarity with the law or procedure do not constitute cause sufficient to overcome a procedural default. *See, e.g. Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992); *Stanley v. Lockhart*, 941 F.2d 707, 710 (8th Cir.1991). Furthermore, because there is no Sixth Amendment right to postconviction counsel, the fact that Petitioner was proceeding *pro se* in her Rule 37 action cannot constitute cause to excuse procedural default. *See Burns v. Gammon*, 173 F.3d 1089, 1093 (8th Cir.1999).

On October 20, 2008, the trial court conducted an evidentiary hearing on the Rule 37 Petition.

On January 15 and February 3, 2009, *before* the trial court had entered a dispositive order in the Rule 37 action, Petitioner filed motions in the Arkansas Supreme Court "requesting that she be provided at public expense [with] copies" of the transcripts from her trial, the remand hearing, and the October 20, 2008 evidentiary hearing. *See Young v. State*, 2009 Ark. 212, 2009 WL 1025993 (Ark. Apr. 16, 2009) (unpublished p*er curiam*).[18] The Arkansas Supreme Court did not rule on those motions until April 16, 2009. *Id.*

On February 27, 2009, the trial court entered an order denying Petitioner's request for Rule 37 Relief. *See* docket entry #18, Ex. 6. On March 23, 2009,

---

[18]The Arkansas Supreme Court's April 16, 2009 decision does not indicate when these motions were filed, but the Arkansas Supreme Court Clerk's office informed the Court that they were filed on January 15 and February 3, 2009.

31

Petitioner filed a timely notice of appeal and designated the entire record. *Id.* From that date, she had ninety days, until June 21, 2009, to perfect her appeal by lodging the record with the Arkansas Supreme Court. *See* Ark. R. App. P. Crim. — 4(b). However, because June 21, 2009 was a Sunday, she had one additional day, until Monday, June 22, 2009 to lodge the record. *See* Ark. R. App. P. — Crim. 17.

On March 23, 2009, Petitioner filed motions in the trial court requesting that: (1) her October 20, 2008 Rule 37 hearing be transcribed at state expense (docket entry #11 at 17); and (2) she be allowed to proceed *in forma pauperis* on appeal.[19] (Docket entry #11 at 17-21).

A short time later, Petitioner mailed her notice of appeal and the motions she filed in the trial court to the Arkansas Supreme Court, along with a letter asking how she could obtain a ruling from the trial court on her pending motion to obtain a transcript of the Rule 37 hearing. (Docket entry #11 at 23). She also asked the Arkansas Supreme Court for  a "copy of the briefing schedule for her appeal." (Docket entry #11 at 23).

On March 31, 2009, the Arkansas Supreme Court's Criminal Justice Coordinator, wrote Petitioner a letter stating the following:

Please be advised that the briefing schedule will not be set until the

---

[19]The trial court never ruled on either of those motions.

appeal is lodged in the Arkansas Supreme Court. As to your queries about obtaining a copy of the hearing and a ruling on the motion in circuit court, this office cannot assist you. Once the Rule 37.1 appeal is lodged here, you may at that time file a motion in the Supreme Court requesting a copy of the record and the transcript of the evidentiary hearing.

(Docket entry #11 at 23).

On April 15, 2009, the state filed a response in the trial court opposing Petitioner's request to obtain a transcript of her Rule 37 hearing at state expense. (Docket entry #22 at 9-10).

On April 16, 2009, the Arkansas Supreme Court issued a decision denying her January 15 and February 3, 2009 motions, which she had filed with the Court *before* the trial court had denied her Rule 37 Petition:

A jury convicted petitioner Leslie Young of capital murder, aggravated robbery, attempted arson, and two counts of theft of property. This court remanded for a new suppression hearing. *Young v. State*, 370 Ark. 147, 257 S.W.3d 870 (2007). Following remand, we affirmed the judgment. *Young v. State*, 373 Ark. 41, 281 S.W.3d 255 (2008). Petitioner has now filed motions requesting that she be provided at public expense copies of the transcripts from her trial, from the remand hearing, and from an evidentiary hearing that petitioner alleges was held on a postconviction relief proceeding in the trial court on October 20, 2008, and a copy of a video tape that she asserts was an exhibit in the record on remand. Petitioner indicates that she requires the copies in connection with her petition in the trial court under Arkansas Rule of Criminal Procedure 37.1 and an appeal in regard to that petition.

At this time, no appeal has been lodged in this court concerning any Rule 37.1 proceeding in this case and no record has been lodged that

33

would contain transcripts from such proceedings. Although petitioner asserts that the transcripts she requests are necessary to perfect her appeal, an appellant does not require such materials to lodge an appeal. As a basis for her request, petitioner claims to be indigent and that she is entitled to access to the courts.

A petitioner is not entitled to access a trial record unless there is a specific point which cannot be raised in a postconviction proceeding without the record or some portion of it. *See Thomas v. State*, 328 Ark. 753, 945 S.W.2d 939 (1997) (per curiam). We do not provide a copy of the transcript to facilitate a postconviction proceeding without a showing that the record is necessary and that specific anticipated points cannot be properly raised without access to the transcript. *See id*. It is well settled that a petitioner is not entitled to photocopying at public expense unless he or she demonstrates some compelling need for specific documentary evidence to support an allegation contained in a petition for postconviction relief. *See Austin v. State*, 287 Ark. 256, 697 S.W.2d 914 (1985) (per curiam).

Petitioner has not identified any pending postconviction proceeding, other than the proceeding in the trial court. There is no appeal pending in this court. Petitioner has not identified any point to be raised in a pending postconviction proceeding, or any other need that must be addressed for an appeal, or the specific portion of the record and how it is required to address that point or other need. We cannot say that petitioner has met the requirements necessary to support granting the request for copies at public expense, and we therefore deny the motions.

It should be noted that when an original action has been filed in this court, the material pertaining to it remains permanently on file with the clerk, unless it is being maintained under seal. Persons may review the material in the clerk's office and photocopy all or portions of it. An incarcerated person desiring a photocopy of a material on file here may write this court, remit the photocopying fee, and request that the copy be mailed to the prison. All persons, including prisoners, must bear the cost of photocopying. *Moore v. Stat*e, 324 Ark. 453, 921 S.W.2d 606 (1996) (per curiam).

*Young v. State*, 2009 Ark. 212, 2009 WL 1025993 (Ark. Apr. 16, 2009) (unpublished *per curiam*).

On April 22, 2009, Petitioner wrote the Sharp County Circuit Clerk asking what she needed to do to timely designate the record, and how much it would cost to obtain a transcript of her October 20, 2008 Rule 37 hearing. (Docket entry #11 at 24). In a letter dated April 27, 2009, the Clerk advised Petitioner that he "did not practice law," and that he had "nothing to do with transcripts." *See* Ex. A attached hereto. He suggested that she contact her lawyer to see if he could find out the name of the court reporter who transcribed her Rule 37 hearing. *Id.* On May 4, 2009, Petitioner filed another motion with the trial court requesting a transcript of her Rule 37 hearing, and a motion requesting an extension of time to "designate the record on appeal."[20] (Docket entry #11 at 26-30).

On June 9, 2009, thirteen days before the June 22 deadline for lodging the record with the Arkansas Supreme Court, Petitioner again wrote the Sharp County Circuit Clerk requesting that he send her a "certified copy of the record . . . if the [in forma pauperis] order is granted . . . [and] a certified copy of the Rule 37 Denial on February 27, 2009." (Docket entry #11 at 34).

On June 10, 2009, Petitioner wrote the trial court stating that the deadline for

---

[20]The trial court also never ruled on those motions.

35

her to "designate" the record to the Arkansas Supreme Court was June 23, 2009.[21]

_____

[21]In fact, Petitioner had until June 22, not June 23, to "lodge the record." *See* Ark. R. App. P. — Crim. 4(b) ("the record on appeal shall be filed with the clerk of the appellate court and docketed therein within ninety (90) days from the filing of the notice of appeal"). Where, as in this case, a "party has designated stenographically reported material for inclusion in the record on appeal," Ark. R. App. P. — Crim. 4(c) establishes a mechanism where a party may request that the trial court extend the time period for filing the record for up to seven months from the date of the order appealed from. *See* Ark. R. App. P. — Crim. 4(c).

If the appellant "demonstrates (by affidavit or otherwise) an inability to obtain entry of an order of extension, then before expiration of the [ninety-day] period prescribed by subdivision (b) . . . the appellant may file a petition for writ of certiorari [to "complete the record"] pursuant to [Ark. R. Sup. Ct. 3-5]." Ark. R. App. P. — Crim. 4(c)(3). "Prior to the time the complete record on appeal is settled and certified as herein provided, either party to the appeal may docket the appeal in order to make in the appellate court a motion . . . to proceed in forma pauperis, or for any intermediate order. The clerk of the trial court, at the request of the moving party, shall certify and transmit to the clerk of the appellate court a copy of such portion of the record of proceedings as may be available or needed for the purpose." Ark. R. App. P. — Crim. 4(e); *see also Woods v. State*, 2002 WL 31487929 (Ark. Nov. 7, 2002) (unpublished) ("In the event petitioner could not tender the full record, his course was to lodge a partial record here within ninety days of the date of the notice of appeal . . . with a petition for writ of certiorari to complete the record").

Rule 4 does not elaborate on what partial record, short of the "complete record on appeal," is sufficient to ask for "intermediate" relief from the Arkansas Supreme Court in a Rule 37 appeal. However, cases indicate that, at a minimum, the appellant must file certified copies of the pleadings and orders showing that the appellant has properly invoked appellate jurisdiction by timely pursuing Rule 37 relief in the trial court, and timely filing a notice of appeal. *See Lewis v. State*, 2001 WL 1590657 (Ark. Dec. 13, 2001) (unpublished) ("in cases in which the jurisdiction of this court is appellate in nature as with appeals from [Rule 37] postconviction orders, it is the certified record of the trial court proceedings that provides the basis on which this court can assume jurisdiction of the matter; therefore, at least a certified partial record is required to perfect an appeal"). In the context of Petitioner's case, this would have required certified copies of: (1) the judgment and commitment order of the underlying criminal conviction; (2) the Rule 37 petition; (3) the order denying Rule 37 relief; (4)

36

(Docket entry #11 at 35). She reminded the trial court of her still pending motions to "proceed *in forma pauperis*" and to extend the time to "designate the record" on appeal. *Id.* Finally, she provided the trial court with a draft order granting her motions and a self-addressed stamped return envelope, and stated that she would provide the executed order to the Sharp County Circuit Clerk.[22] *Id.*

June 22, 2009, was the deadline for Petitioner to lodge the Rule 37 record with the Arkansas Supreme Court. She failed to meet that deadline.

On June 30 and July 31, 2009, Petitioner wrote letters to the Sharp County Circuit Clerk requesting certified copies of certain pleadings and orders in her Rule 37 action.  *See* Exs. B and C attached hereto. It appears that the Sharp County Circuit Clerk provided Petitioner with certified copies of the requested documents on July 21 and August 9, 2009. *See* docket entry #18, Ex. 6.

On August 24, 2009, Petitioner lodged the partial certified record with the Arkansas Supreme Court, along with a motion requesting permission to proceed with a belated appeal.[23] (Docket entry #18, Ex. 6; docket entry #10 at 36-38).

_____

the notice of appeal; and (5) the pending motions for IFP status, a copy of the hearing transcript at state expense, and the motion to extend time to lodge the record.

[22]The trial court never responded to this letter.

[23]Under Arkansas appellate practice, a motion to proceed with a "belated appeal" is a request to file an untimely notice of appeal in the trial court. A motion

On November 5, 2009, the Arkansas Supreme Court denied Petitioner's motion

to proceed with a belated appeal, thereby terminating her appeal:

> Petitioner requests that she be permitted to proceed with her appeal
> because she has unsuccessfully sought to have the circuit clerk, circuit
> judge, prison law library supervisor, and the inmate's attorney
> "designate" the record, because she is entitled to appellate review and
> her appeal is meritorious, and because she is indigent.
>
> A petitioner has the right to appeal a ruling on a petition for
> postconviction relief. *Scott v. State*, 281 Ark. 436, 664 S.W.2d 475
> (1984) (per curiam). Along with that right, however, goes the
> responsibility to comply with our rules of procedure. Where the
> transcript was not filed within the time prescribed under Rule 4(b), this
> court may only act upon and decide those cases where the movant shows
> good cause for the omission. Ark. R.App. P.-Crim. 2(e).
>
> Petitioner did not lodge the transcript within the time required and the
> record does not indicate that any extension was granted. She does not
> provide in the motion a reason for the delay, and, instead, appears to
> indicate that others were responsible for lodging the transcript in this
> court. Petitioner does not demonstrate good cause for the failure to
> timely file the transcript by placing the blame upon other individuals. It
> is not the responsibility of the circuit clerk, circuit court, or anyone other
> than the appellant, to perfect an appeal. *Branning v. State*, 363 Ark. 369,
> 214 S.W.3d 237 (2005) (per curiam). All litigants, including those who
> proceed pro se, must bear responsibility for conforming to the rules of
> procedure or demonstrating a good cause for not doing so. *Marshall v.
> State*, 2009 Ark. 420 (per curiam); *Peterson v. State*, 289 Ark. 452, 711
> S.W.2d 830 (1986) (per curiam); *Walker v. State*, 283 Ark. 339, 676
> S.W.2d 460 (1984) (per curiam); *Thompson v. State*, 280 Ark. 163, 655

---

to file an untimely record with the Clerk of the Arkansas Supreme Court is a request
for a "rule on clerk" under Ark. R. Sup. Ct. 2-2.

The Arkansas Supreme Court properly construed Petitioner's motion for a
"belated appeal" as a request for a "rule on clerk" to file an untimely record.

S.W.2d 424 (1983) (per curiam); *see also Tarry v. State*, 353 Ark. 158, 114 S.W.3d 161 (2003) (per curiam). We note that indigent, *pro se* appellants routinely pursue appeals to this court and comply with our rules concerning the lodging of the transcript.

*Young v. State*, 2009 Ark. 556, 2009 WL 3681658 (Ark. Nov. 5, 2009).[24]

The Court is troubled by the Sharp County Circuit Court's repeated refusals to rule on Petitioner's timely (*and time-sensitive*) motions seeking *in forma pauperis* status, a copy of the Rule 37 record at state expense, and an extension of time to lodge the record with the Arkansas Supreme Court.[25] The trial court's intransigence

---

[24]In an alternative holding, the Arkansas Supreme Court noted that the partial certified record contained only Petitioner's Amended Rule 37 Petition, not her original Rule 37 Petition. While the original Rule 37 petition was filed within sixty days after her direct appeal was affirmed, the Amended Rule 37 Petition was not. Because only the latter document was in the partial certified record, *see* docket entry #18, ex. 6, the Arkansas Supreme Court held that Petitioner had failed to show she timely pursued Rule 37 relief in the trial court. Accordingly, the trial court lacked jurisdiction to even consider the Amended Rule 37 Petition.

Of course, this alternative holding is a sheer fiction. Even Respondent concedes that Petitioner timely initiated a Rule 37 action in Sharp County Circuit Court by filing her original Rule 37 Petition on May 29, 2008, within 60 days of the issuance of the appellate mandate. (Docket entry #10 at 3). As a *pro se* litigant, it seems clear that Petitioner inadvertently failed to include her May 29, 2008 Rule 37 Petition in the partial record she tendered in her Rule 37 appeal. Thus, it is difficult to understand how, in all fairness, this could be construed by the Arkansas Supreme Court to mean she did not timely pursue Rule 37 relief in the trial court.

[25]Petitioner submitted the following post-conviction pleadings to the trial court: (1) a motion for leave to proceed on appeal i*n forma pauperis* [filed on March 23, 2009 - docket entry #11 at 18]; (2) a motion to obtain a copy of the Rule 37 hearing transcript at state expense [filed March 23, 2009 - docket entry #11 at 17]; (3) a second motion for the Rule 37 hearing transcript at state expense [filed May 4, 2009 -

undoubtedly contributed to Petitioner's confusion over how to obtain much less lodge the record with the Arkansas Supreme Court.

Nonetheless, by at least mid-May 2009, Petitioner had every indication that the trial court might continue to ignore her pending motions and not issue a ruling before her ninety days expired to lodge the record with the Arkansas Supreme Court on June 22, 2009. Under a long line of Arkansas Supreme Court cases, she was charged with knowing how to lodge a partial record with the Court, *before* her ninety days expired, and then seek relief from the Court in obtaining a transcript of the Rule 37 hearing.[26] Had she done so, it seems likely that the Arkansas Supreme Court would have allowed her to proceed with her appeal.

---

docket entry #11 at 28-30]; and (4) a motion for an extension of time to "designate" the record on appeal [filed May 4, 2009 - docket entry #11 at 26-27].

[26]For example, she could have lodged a partial record and requested that the Arkansas Supreme Court grant her in forma pauperis status, issue a writ of mandamus requiring the trial court to rule on her motions, as well as a writ of certiorari to the Sharp County Circuit Clerk to bring up the record. *See e.g. Cummings v. State*, 2010 Ark. 301, 2010 WL 2444638 (June 17, 2010) (granting writ of certiorari for transcript of Rule 37 hearing based on partial record)*; Bunch v. State,* 2007 WL 7585999 (Jan. 25, 2007) (noting that the Rule 37 appellant "lodged a partial record here to preserve the appeal")*; Stevens v. State*, 2002 WL 31269688 (Ark. 2002) (unpublished) (rejecting argument that the trial court's failure to rule on a motion to extend the time to lodge the record was cause for a rule on the clerk — "It is the responsibility of the appellant to secure action on a motion for time. If a motion for extension of time is filed and it becomes apparent that it will not be acted on by the date the record is due in the appellate court, the appellant must secure a partial record and lodge it here in a timely manner") (*citing Mayo v. State*, 321 Ark. 566, 906 S.W.2d 285 (1995)).

For many years, the Arkansas Supreme Court has steadfastly held that it is

solely the responsibility of a *pro se* litigant to understand the complex rules for

lodging a timely record on appeal.[27]   While the Court's position has often produced

harsh results for *pro se* litigants, it still remains the law that must be applied to the

facts in this case.

Accordingly, the Court concludes that Petitioner has not shown cause to excuse

---

[27]In many cases with similar facts, the Arkansas Supreme Court has declined to find cause to excuse the lodging of an untimely record. *See Patterson v. State*, 2009 Ark. 237, 2009 WL 1098790 (Ark. 2009) (unpublished) ("Here, petitioner filed a motion to extend the time for filing the record on appeal, but no order was entered by the trial court before the ninety-day period expired. Petitioner places the blame on the trial court for failing to timely enter an order granting the motion for extension of time. However, when proceeding pro se, it is not the responsibility of the circuit clerk, circuit court or anyone other than the petitioner to perfect an appeal"); *Wigley v. State*, 2004 WL 1175316 (Ark. May 27, 2004) (unpublished) (the trial court's failure to rule on motion for extension of time to lodge the record did not constitute good cause for *pro se* litigant's failure to timely lodge the record); *Plunkett v. State*, 2008 WL 741437 (Ark. 2008) (unpublished) (holding that it was the *pro se* litigant's responsibility to obtain a ruling on his motion for extension of time to lodge an untimely record); *McCullough v. State*, 2008 WL 538493 (Ark. 2008) (unpublished) (rejecting the argument that "that the circuit clerk and trial court should be responsible to timely file the record"); *Jiminez v. State,* 2005 WL 23416 (Ark. 2005) (unpublished) ("Placing blame on the clerk does not constitute good cause for petitioner's failure to perfect the appeal"); *Tinkes v. State*, 2004 WL 2251825 (Ark. 2004) (unpublished) (circuit clerk's failure to timely certify the Rule 37 record did not constitute good cause for pro se litigant's failure to timely lodge the record); *Clem v. State*, 2004 WL 2252109 (Ark. 2004) (unpublished) (pro se litigant's contention that "he made a diligent effort to perfect the appeal but the circuit clerk refused to prepare the record and provide it to him to be lodged here" did not show good cause for the petitioner's late tender of the record).

the procedural default of her remaining habeas claims, and recommends that they be denied.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT the Petition for a Writ of Habeas Corpus (docket entry #2) be DENIED, and this case be DISMISSED, WITH PREJUDICE.   IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 13th day of December, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

# TOMMY ESTES

**CIRCUIT & COUNTY CLERK**

P.O. Box 307

Ash Flat, AR 72513

Tel: (870) 994-7361; FAX: (870) 994-7712

*Deputy Clerks*

*Sara Dienst*

*Julie Solomon*

*Laura Eversoll*

*Connie Satterwhite*

*Deputy Clerks*

*Sabrina Jelks*

*Tonya Powell*

*Alisa Black, Chief Deputy Clerk*

FILED

APR 27 2009

TOMMY ESTES, CLERK

BY _____ D.C.

APRIL 27, 2009

LESLIE YOUNG #709094
302 CORRECTION DRIVE
NEWPORT, AR  72112

IN RE: LETTER RECEIVED 04-27-'07 (COPY ATTACHED)

MS. YOUNG:

   PLEASE BE ADVISED THAT I DO NOT PRACTICE LAW AT ANY LEVEL BEFORE,
DURING OR AFTER CASES ARE FILED. I SIMPLY KEEP THE CASE FILE AND PLACE
DOCUMENTS INTO THE CASE FOLDER AS THEY ARE PRESENTED FOR "FILING".

   FUTHERMORE, I DON'T READ THE CONTENT OF ITEMS FILED, AS WE MAY RECEIVE
HUNDREDS A DAY. ANY PROACTIVE ACTION THAT YOU WANT TAKEN IN A MATTER
HAS TO BE DONE BY YOU OR YOUR ATTORNEY.

   REGARDING TRANSCRIPTS, I HAVE NOTHING TO DO WITH TRANSCRIPTS. I
DID NOT ATTEND YOUR HEARING AND HAVE NO IDEA WHO THE COURT REPORTER WAS.
PERHAPS YOUR ATTORNEY MIGHT BE AWARE OF WHO SHE WAS.

   I HOPE THIS IS HELPFUL TO YOU FOR FUTURE FILINGS. GOOD LUCK.

                    SINCERELY,

                    TOMMY ESTES, CLERK

cc. file



A

Leslie Young 709094
3be Corrections Drive
Newport, Ark 72112

Sharp County Circuit Clerk
P.O. Box 307
Ash Flat, Ark 72513
Re: Certified documents
June 30, 2009

**FILED**
JUL 21 2009
BY: TOMMY ESTES CLERK
D.C.

Dear Clerk:
    I need "Certified" copies of
① Judgement + Conviction Case # 2006-6,
② Rule 37.1 Petition - the Amended + Extended.
③ Notice of Appeal filed on March 23, 2009
for filing purposes in the Arkansas
Supreme Court.
    Thank You for your assistence.

Respectfully,
Leslie Young
Pro-se



B

a2

Leslie Young 704074
302 Correction Drive
Newport Ark 72112

FILED
AUG 07 2009
TOMMY ESTES, CLERK
BY [signature] D.C.

Sharp County Circuit Clerk
P.O. Box 307
Ash Flat, Ark 72513
Re: Certified Copies of Motions

July 31. 2009

Dear Clerk:

I need certified copies of the following motions for purposes of the Supreme Court.

Thank you for your prompt attention to this request.

Oh, Please include the certified judgements per motion if possible.

Respectfully
Leslie Young
Pro-se

1) letters to Clerk
(2) Dear Clerk + Dear Mr Estes
dated 6.9.09 dated 6-22.09

2) Motion to Duplicate at State Expense; Rule 37 Hearing Transcript - Filed 3.23.09

3) Motion of Transcript For Rule 37 Appeal Filed 5.4.09.

C

PENGAD-Bayonne, N. J.

pg 2

4) In-forma Pauperis to file Motion for Transcript for Rule 37 / Notice g appeal Filed 3-23-09

5) Motion to Compel Clerk - Filed 5-4-09

These are requested for purposes of filing a Motion for belated appeal to the Supreme Court. ~~Please file Motion enclosed.~~

Thanks.

Leslie Young
pro-se

cc/ file
s. court